**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LISA ROGERS and JESSIE RANDOLPH,** Individually and on behalf of all others similarly situated, | **Case No. 1:25-cv-9564** |
| ***Plaintiffs*,** | **JURY TRIAL DEMANDED** |
| v. | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **TITAN SECURITY GROUP, LLC,** | |
| ***Defendant*.** | **CLASS ACTIONS PURSUANT TO FED. R. CIV. P. 23** |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiffs—Lisa Rogers and Jessie Randolph—bring this action individually and on behalf of all current and former hourly Security Workers (collectively, "Plaintiffs and the Putative Collective/Class Members"), who worked for Defendant—Titan Security Group, LLC ("Titan Security")—at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1–105/15 ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1–115/15 ("IWPCA") (the IMWL and IWPCA are collectively referred to as the "Illinois Acts").

### I.
### OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, and class actions pursuant to the state laws of Illinois under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.    Plaintiffs and the Putative Collective/Class Members are those similarly situated persons who worked for Titan Security at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked, nor the correct amount of wages, including overtime, in violation of state and federal law.

3.    Although Plaintiffs and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.    Likewise, Plaintiffs and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.    During the relevant time period(s), Titan Security knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.    Specifically, Titan Security's regular practice—including during weeks when Plaintiffs and the Putative Collective/Class Members worked and recorded hours in excess of forty (40) (not counting hours worked "off-the-clock")—was (and is) to deduct a 30-minute meal-period from Plaintiffs and the Putative Collective/Class Members' daily time even though they regularly performed compensable work (and continue to perform) "off the clock" through their respective meal-period breaks.

7.    In addition, Titan Security knowingly and deliberately engaged in routine "time shaving"—unlawfully reducing the recorded hours of Plaintiffs and the Putative Collective/Class Members—resulting in underpayment of both straight time and overtime wages.

8. Finally, Titan Security also failed to pay Plaintiffs and the Putative Collective/Class Members for time spent in mandatory training classes.

9. The effect of Titan Security's practices were (and are) that all compensable time worked by Plaintiffs and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Titan Security has failed to properly compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

10. Titan Security knowingly and deliberately failed to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked and the proper amount of overtime at the proper rate on a routine and regular basis during the relevant time period(s).

11. Plaintiffs and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

12. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of Illinois as class actions pursuant to FED. R. CIV. P. 23.

13. Plaintiffs also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

14. Plaintiffs also pray that the Rule 23 classes are certified as defined herein, with Plaintiff Randolph named as the Class Representative.

## II.
## THE PARTIES

15. Plaintiff—Lisa Rogers ("Rogers")—was employed by Titan Security in Michigan during the relevant time period(s). Plaintiff Rogers did not receive compensation for all hours worked

or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

16.     Plaintiff—Jessie Randolph ("Randolph")—was employed by Titan Security in Illinois during the relevant time period(s). Plaintiff Randolph did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

17.     The FLSA Collective Members are those current and former hourly Security Workers who were employed by Titan Security, anywhere in the United States, at any time from August 12, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

18.     The IMWL Class Members are those current and former hourly Security Workers who were employed by Titan Security, in the State of Illinois, at any time from August 12, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Randolph worked and was paid.

19.     The IWPCA Class Members are those current and former hourly Security Workers who were employed by Titan Security, in the State of Illinois, at any time from August 12, 2015, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Randolph worked and was paid.

20.     Defendant Titan Security Group, LLC, ("Titan Security") is a domestic limited liability company, that is headquartered in, and licensed to do business in, the State of Illinois and may be

---

[1] The written consent of Lisa Rogers is attached hereto as Exhibit "A."

[2] The written consent of Jessie Randolph is attached hereto as Exhibit "B."

served through its registered agent for service of process: **Northwest Registered Agent Service, Inc., 2501 Chatham Rd STE N, Springfield, IL 62704.**

## III.
## JURISDICTION & VENUE

21.     This Court has federal question jurisdiction over Plaintiffs' claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

22.     This Court has supplemental jurisdiction over Plaintiff Randolph's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff Randolph's claims under the FLSA that they form part of the same case or controversy.

23.     Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

24.     This Court has general personal jurisdiction over Titan Security because Illinois qualifies as its home state.

25.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Northern District of Illinois because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

26.     Additionally, Titan Security's corporate headquarters are in Chicago, Illinois, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

27.     Defendant Titan Security provides security services to its clients throughout the United States.[3]

28.     To provide its services, Titan Security employed (and continues to employ) numerous hourly Security Workers—including Plaintiffs and the Putative Collective/Class Members.

---

[3] https://titan-security.com/about-titan-security-group/.

29.     Plaintiffs and the Putative Collective/Class Members were employed by Titan Security as non-exempt hourly employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

30.     Plaintiffs and the Putative Collective/Class Members' job duties include providing security services to Titan Security's clients.

31.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work.

32.     Importantly, none of the FLSA exemptions relieving a covered employer (such as Titan Security) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiffs or the Putative Collective/Class Members.

33.     Plaintiff Rogers was employed by Titan Security as a Security Guard and Supervisor in Michigan from approximately April of 2016 until March of 2025.

34.     Plaintiff Randolph was employed by Titan Security as a Field Supervisor in Illinois from approximately March 2022 until October 2023.

35.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Titan Security resulting in the complained of FLSA and state law violations.

36.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their job duties.

37.     Plaintiffs and the Putative Collective/Class Members are non-exempt employees who were (and are) paid by the hour.

38.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of Titan Security resulting in the complained of FLSA and state law violations.

**Unpaid Meal Breaks**

39.     Plaintiffs and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they were (and are) all paid on an hourly basis and had (and continue to have) a meal break automatically deducted from their daily time.

40.     Plaintiffs and the Putative Collective/Class Members were typically scheduled to work five (5) days per week, and approximately eight (8) to twelve (12) hours per day, which equates to forty (40) to sixty (60) hours per week—these are referred to as "on-the-clock" hours.

41.     In addition to their "on-the-clock" hours, Plaintiffs and the Putative Collective/Class Members regularly worked approximately two-and one-half hours "off-the-clock" per week and have not been compensated for that time.

42.     Titan Security has a policy to automatically deduct one 30-minute meal period from Plaintiffs and the Putative Collective/Class Members' daily time regardless of whether they perform compensable work during such "breaks."

43.     Despite automatically deducting thirty (30) minutes from Plaintiffs and Putative Collective/Class Members' time each shift, Plaintiffs and the Putative Collective/Class Members did not receive or take a thirty (30) minute meal break.

44.     Titan Security was (and continues to be) aware that Plaintiffs and the Putative Collective/Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and relevant state law.

45.     Titan Security benefitted from Plaintiffs and the Putative Collective/Class Members' free labor, as Plaintiffs and the Putative Collective/Class Members typically worked throughout their entire shift without taking a break.

46.     Titan Security knew Plaintiffs and the Putative Collective/Class Members did not take breaks because Titan Security's supervisors observed Plaintiffs and the Putative Collective/Class Members work throughout their entire shifts without taking a break.

47.     Titan Security also knew Plaintiffs and the Putative Collective/Class Members did not take breaks because Plaintiffs and the Putative Collective/Class Members complained to Titan Security that they did not take meal breaks and should have been paid for their time.

48.     Titan Security's thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiffs and the Putative Collective/Class Members working straight time hours and overtime hours for which they were (and are) not compensated at the rates required by the FLSA and applicable state law.

49.     Specifically, when Plaintiffs and the Putative Collective/Class Members worked five (5) or more eight-hour shifts in a week and did not receive a meal break during any shift, Titan Security's meal break policy resulted in Plaintiffs and the Putative Collective/Class Members not being paid for two and a half (2.5) hours of compensable overtime work.

50.     When Plaintiffs and the Putative Collective/Class Members worked four (4) or fewer eight-hour shifts in a week and did not receive a meal break during any shift, Titan Security's meal break policy resulted in Plaintiffs and the Putative Collective/Class Members not being paid for two (2) hours of compensable straight time work at the contractually agreed upon regular rate of pay.

**Time Shaving**

51.     In addition to deducting time for meal breaks that Plaintiffs and the Putative Collective/Class Members did not receive, Titan Security had (and continues to have) a practice of manually altering, reducing, or rounding down employee time entries, including shaving time off the beginning and/or end of shifts, which routinely resulted (and continues to result) in the underreporting of compensable time worked.

52.     Specifically, Titan Security shaved off or eliminated hours worked by Plaintiffs and the Putative Collective/Class Members that exceeded their scheduled shift hours.

53.     Titan Security was (and continues to be) aware that Plaintiffs and the Putative Collective/Class Members regularly worked (and continue to work) uncompensated time due to time shaving, in violation of the FLSA and applicable state law.

54.     Titan Security benefited from Plaintiffs and the Putative Collective/Class Members' unpaid labor, as it avoided compensating significant amounts of straight time and overtime by shaving time from their recorded hours.

55.     Titan Security knew or should have known that Plaintiffs and the Putative Collective/Class Members were performing compensable work during the times that were later shaved or deleted from their time records.

56.     Specifically, Plaintiffs and the Putative Collective/Class Members reported their hours worked to their supervisors and the supervisors refused to include all hours worked in Plaintiffs and the Putative Collective/Class Members' compensable time.

57.     Titan Security's time shaving practices resulted (and continue to result) in Plaintiffs and the Putative Collective/Class Members working straight time hours and overtime hours for which they were (and are) not compensated at the rates required by the FLSA and applicable state law.

**Unpaid Training Time**

58.     Finally, Titan Security employed (and continues to employ) a companywide practice of requiring Plaintiffs and the Putative Collective/Class Members to attend mandatory unpaid training every thirty (30) to sixty (60) days.

59.     Specifically, Titan Security requires Plaintiffs and the Putative Collective/Class Members to attend a training course, hosted by Titan Security, to ensure they know how to act as a

Security Worker and to update them on company policies, procedures, and local regulations related to their work.

60.     Although the training is required by Titan Security and benefits Titan Security by ensuring its workforce knows how to perform the work they were hired to perform, Titan Security does not consider the training time compensable, and it is performed off-the-clock.

61.     Titan Security was (and continues to be) aware that Plaintiffs and the Putative Collective/Class Members regularly worked (and continue to work) without being paid due to the required off-the-clock training, in violation of the FLSA and applicable state law.

62.     Titan Security benefited from Plaintiffs and the Putative Collective/Class Members' unpaid labor, as it avoided compensating significant amounts of straight time and overtime by not paying Plaintiffs and the Putative Collective/Class Members for time spent in mandatory training.

63.     Titan Security knew or should have known that Plaintiffs and the Putative Collective/Class Members were performing compensable work during these mandatory training sessions.

64.     As a result of Titan Security's failure to compensate Plaintiffs and the Putative Collective/Class Members for all hours worked, Plaintiffs and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

65.     Titan Security's failure to compensate Plaintiffs and the Putative Collective/Class Members overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA and applicable state law.

66.     Titan Security knew or should have known that it was not (and is not) compensating Plaintiffs and the Putative Collective/Class Members for the proper amount of overtime compensation at the proper rate in violation of the FLSA.

67. Titan Security knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiffs and the Putative Collective/Class Members would cause, did cause, and continues to cause, financial injury to Plaintiffs and the Putative Collective/Class Members.

68. Titan Security knew or should have known that not compensating Plaintiffs and the Putative Collective/Class Members for all overtime hours worked at the correct rates would cause, did cause, and continues to cause, financial injury to Plaintiffs and the Putative Collective/Class Members.

69. Because Titan Security did not pay Plaintiffs and the Putative Collective/Class Members for all straight time worked, Titan Security's pay policies and practices violated (and continue to violate) applicable state law.

70. Because Titan Security did not pay Plaintiffs and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Titan Security's pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state law.

71. Plaintiffs and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time, liquidated damages, penalties, and other damages owed pursuant to applicable state law.

**V.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

72. The preceding paragraphs are incorporated as though fully set forth herein.

73.     The FLSA Collective is defined as follows:

**ALL HOURLY SECURITY WORKERS WHO WERE EMPLOYED BY TITAN SECURITY GROUP, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM AUGUST 12, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

74.     At all material times, Titan Security has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

75.     At all material times, Titan Security has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

76.     At all material times, Titan Security has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the provision of security infrastructure and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

77.     Specifically, Titan Security employs numerous hourly employees to provide services in the security industry throughout the United States, provides integrated and electronic security systems and solutions within the United States, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

78.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Titan Security, these individuals provided services for Titan Security that involved interstate commerce for purposes of the FLSA.

79.     In performing work for Titan Security, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

80.     Specifically, Plaintiffs and the FLSA Collective Members are (or were) hourly employees who assisted Titan Security's customers throughout the United States. 29 U.S.C. § 203(j).

81.     At all material times, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

82.     The proposed classes of similarly situated employees—that is, the FLSA collectives sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 73.

83.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Titan Security.

## B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

84.     Titan Security violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, providing security related services, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

85.     Moreover, Titan Security knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

86.     Titan Security knew or should have known their pay practices were in violation of the FLSA.

87.     Titan Security is a sophisticated party and employer, and therefore knew (or should have known) their pay policies were (and continue to be) in violation of the FLSA.

88.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Titan Security to pay them according to the law.

89.     The decision and practice by Titan Security to not pay Plaintiffs and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

90.     Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

91.     All previous paragraphs are incorporated as though fully set forth herein.

92.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action collectively on behalf of Titan Security's employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

93.     Other similarly situated employees of Titan Security have been victimized by Titan Security's patterns, practices, and policies, which are in willful violation of the FLSA.

94.     The FLSA Collectives are defined in Paragraph 73.

95.     Titan Security's failure to pay Plaintiffs and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Titan Security, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

96.     Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

97.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

98.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

99.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

100.    Absent a collective action, many members of the proposed FLSA collectives will not likely obtain redress of their injuries and Titan Security will retain the proceeds of their violations.

101.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

102.    Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as in Paragraph 73.

**<u>SECOND CAUSE OF ACTION</u>**
**(Class Action Alleging Violations of the IMWL)**

**A.      IMWL COVERAGE**

103.    All previous paragraphs are incorporated as though fully set forth herein.

104.    The IMWL Class is defined as:

**ALL HOURLY SECURITY WORKERS WHO WERE EMPLOYED BY TITAN SECURITY GROUP, LLC, IN THE STATE OF ILLINOIS, AT ANY TIME FROM AUGUST 12, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("IMWL Class Members").**

105. At all material times, Titan Security has been an "employer" as defined by the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3(c).

106. At all material times, Plaintiff Randolph and the IMWL Class Members were Titan Security's "employees" as defined within the IMWL. *See* 820 Ill. Comp. Stat. Ann. 105/3(d).

107. Titan Security—the "employer"—is not exempt from paying wages and overtime benefits under the IMWL.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IMWL**

108. All previous paragraphs are incorporated as though fully set forth herein.

109. The IMWL requires employers, like Titan Security, to pay employees, including Plaintiff Randolph and the IMWL Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay—based on all renumeration recovered—for all hours worked after forty (40) hours in a workweek. *See* 820 Ill. Comp. Stat. Ann. 105/4a.

110. Titan Security violated (and continues to violate) the IMWL by failing to pay Plaintiff Randolph and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including off-the-clock hours worked by Plaintiff Randolph and the IMWL Class Members during their unpaid meal breaks, unpaid training classes, and for the work time that was shaved off by Titan Security.

111. In violating the IMWL, Titan Security acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

112. As a direct and proximate result of Titan Security's willful conduct, Plaintiff Randolph and the IMWL Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including treble damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IMWL. *See* 820 ILCS 105/12(A).

113.    Titan Security is in possession and control of necessary documents and information from which Plaintiff Randolph would be able to precisely calculate damages.

114.    The proposed class of putative class members sought to be certified pursuant to the IMWL is defined in Paragraph 104.

115.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Titan Security.

C.    **IMWL CLASS ALLEGATIONS**

116.    Plaintiff Randolph and the IMWL Class Members bring their IMWL claims as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Titan Security to work in Illinois since August 12, 2022.

117.    Class action treatment of Plaintiff Randolph and the IMWL Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

118.    The number of IMWL Class Members is so numerous that joinder of all class members is impracticable.

119.    Plaintiff Randolph's IMWL state-law claims share common questions of law and fact with the claims of the IMWL Class Members.

120.    Plaintiff Randolph is a member of the IMWL Class, his claims are typical of the claims of other IMWL Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other IMWL Class Members.

121.    Plaintiff Randolph and his counsel will fairly and adequately represent the IMWL Class Members and their interests.

122.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class

action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the IMWL Class should be certified as defined in Paragraph 104.

**THIRD CAUSE OF ACTION**
**(Class Action Alleging Violations of the IWPCA)**

**A.      IWPCA COVERAGE**

123.      All previous paragraphs are incorporated as though fully set forth herein.

124.      The IWPCA Class is defined as:

**ALL HOURLY SECURITY WORKERS WHO WERE EMPLOYED BY TITAN SECURITY GROUP, LLC, IN THE STATE OF ILLINOIS, AT ANY TIME FROM AUGUST 12, 2015, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("IWPCA Class Members").**

125.      At all material times, Titan Security has been an "employer" as defined by the IWPCA. *See* 820 Ill. Comp. Stat. Ann. 115/2.

126.      At all material times, Plaintiff Randolph and the IWPCA Class Members were Titan Security's "employees" as defined within the IWPCA. *Id.*

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE IWPCA**

127.      All previous paragraphs are incorporated as though fully set forth herein.

128.      The IWPCA requires employers, like Titan Security, to pay employees, including Plaintiff Randolph and the IWPCA Class Members, for all hours they work at the rate(s) agreed to by the Parties.

129.      During the course of their employment, Titan Security agreed to pay Plaintiff Randolph and each IWPCA Class Member an hourly rate for all hours they worked within a workweek.

130.      Plaintiff Randolph and each IWPCA Class Member accepted Titan Security's offer.

131.      But during the course of their employment, Titan Security failed to pay Plaintiff Randolph and the IWPCA Class Members for all the hours they worked at the rates Titan Security agreed to pay them because Titan Security failed to pay Plaintiff Randolph and the IWPCA Class

Members for work performed off-the-clock, including during their unpaid meal break, unpaid training classes, and for the work time that was shaved off by Titan Security.

132. Titan Security violated (and continues to violate) the IWPCA by failing to pay Plaintiff Randolph and the IWPCA Class Members all wages earned (at the rates Titan Security agreed to pay them) for all hours worked.

133. In violating the IWPCA, Titan Security acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Illinois law.

134. As a direct and proximate result of Titan Security's willful conduct, Plaintiff Randolph and the IWPCA Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, monthly statutory damages, and reasonable attorneys' fees pursuant to the IWPCA. *See* 820 ILCS 115/14(A).

135. Titan Security is in possession and control of necessary documents and information from which Plaintiff Randolph would be able to precisely calculate damages.

136. The proposed class of putative class members sought to be certified pursuant to the IWPCA is defined in Paragraph 124.

137. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Titan Security.

## C.   IWPCA CLASS ALLEGATIONS

138. Plaintiff Randolph and the IWPCA Class Members bring their IWPCA claims as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Titan Security to work in Illinois since August 12, 2015.

139. Class action treatment of Plaintiff Randolph and the IWPCA Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

140. The number of IWPCA Class Members is so numerous that joinder of all class members is impracticable.

141. Plaintiff Randolph's IWPCA state-law claims share common questions of law and fact with the claims of the IWPCA Class Members.

142. Plaintiff Randolph is a member of the IWPCA Class, his claims are typical of the claims of other IWPCA Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other IWPCA Class Members.

143. Plaintiff Randolph and his counsel will fairly and adequately represent the IWPCA Class Members and their interests.

144. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the IWPCA Class should be certified as defined in Paragraph 124.

## VI.
## RELIEF SOUGHT

145. Plaintiffs respectfully pray for judgment against Titan Security as follows:

a. For an Order certifying the FLSA Collective as defined in ¶ 73.

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Titan Security liable for unpaid wages, including unpaid overtime wages, due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

d.      For an Order certifying the IMWL Class as defined in ¶ 104, and designating Plaintiff Randolph as Representative of the IMWL Class;

e.      For an Order pursuant to Illinois state law awarding Plaintiff Randolph and the IMWL Class Members damages for unpaid wages and all other damages allowed by law;

f.      For an Order certifying the IPWCA Class as defined in ¶ 124, and designating Plaintiff Randolph as Representative of the IPWCA Class;

g.      For an Order pursuant to Illinois state law awarding Plaintiff Randolph and the IPWCA Class Members damages for unpaid wages and all other damages allowed by law;

h.      For an Order awarding the costs of this action;

i.      For an Order awarding attorneys' fees;

j.      For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

k.      For an Order awarding Plaintiffs service awards as permitted by law;

l.      For an Order compelling the accounting of the books and records of Titan Security, at Titan Security's expense (should discovery prove inadequate); and

m.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   August 12, 2025                     Respectfully submitted,

**STEPHAN ZOURAS, LLC**

By:       /s/ *Ryan F. Stephan*
          Ryan F. Stephan
          James B. Zouras
          Anna M. Ceragioli
          Michael J. Casas
          222. W. Adams St., Suite 2020
          Chicago, Illinois 60606
          312.233.1550
          312.233.1560 *f*
          rstephan@stephanzouras.com
          jzouras@stephanzouras.com
          aceragioli@stephanzouras.com
          mcasas@stephanzouras.com
          Firm ID: 43734

**ANDERSON ALEXANDER, PLLC**

By:       /s/ *Clif Alexander*
          **Clif Alexander**
          Texas Bar No. 24064805
          clif@a2xlaw.com
          **Austin Anderson**
          Texas Bar No. 24045189
          austin@a2xlaw.com
          **Carter T. Hastings**
          Texas Bar No. 24101879
          carter@a2xlaw.com
          101 N. Shoreline Blvd, Suite 610
          Corpus Christi, Texas 78401
          Telephone: (361) 452-1279
          Facsimile: (361) 452-1284

          ***Attorneys in Charge for Plaintiffs and the Putative***
          ***Collective/Class Members***