**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LISA ROGERS and JESSIE RANDOLPH, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | No. 25 C 9564 |
| v. | ) | Judge Sara L. Ellis |
| TITAN SECURITY GROUP, LLC | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiffs Lisa Rogers and Jessie Randolph bring this case against Defendant Titan Security Group, LLC ("Titan"), alleging that Titan failed to properly compensate them for the time they worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq*. Plaintiffs now move for court-authorized notice of this lawsuit to the following proposed collective:

> All current and former hourly, non-exempt security guards who were employed by Titan Security Group, LLC, anywhere in the United States, at any time from three years preceding the filing of the Complaint through the final disposition of this matter.

The Court finds that Plaintiffs have provided sufficient evidence to establish the existence of a material factual dispute as to whether the proposed collective is similarly situated and therefore grants Plaintiffs' motion for court-authorized notice. The Court directs Titan to provide Plaintiffs with a list of potential opt-in plaintiffs, including their names, dates and locations of employment, and contact information within fourteen days of this order. The Court

defers the issuance of notice until the parties submit additional evidence regarding the security guards allegedly bound by arbitration agreements. The Court also defers making a final determination as to whether Plaintiffs and the potential plaintiffs are similarly situated until after opt-in and discovery are complete, at which point Plaintiffs may file a motion for certification.

## BACKGROUND

Titan provides security services to clients throughout the United States. To provide these services, Titan employs numerous non-exempt hourly security workers, including Plaintiffs. Randolph worked at Titan as a field supervisor in Illinois from approximately March 2022 to October 2023, while Rogers worked as a security guard and supervisor in Michigan from approximately April 2016 until March 2025.

Plaintiffs allege that Titan "had (and continues to have) a practice of rounding down employee time entries, including shaving time off the beginning and/or end of shifts, which routinely resulted (and continues to result) in the underreporting of compensable time worked." Doc. 143 ¶ 37. Titan also allegedly taught Plaintiffs and other security guards to clock in five to ten minutes early to "debrief with the outgoing shift, speak to their customer contact, and generally prepare themselves for the shift ahead," without compensating them for this time. *Id.* ¶ 43.

## LEGAL STANDARD

Under Section 216(b) of the Fair Labor Standards Act, employees may bring their claims "through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). A collective action is a "unique enforcement mechanism," allowing for the "consolidation of individual cases, brought by individual plaintiffs," all of whom "enjoy[] full party status."

*Richards v. Eli Lilly & Co.*, 149 F.4th 901, 906 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 1503 (2026). Unlike in a class action, each plaintiff "must affirmatively opt in to join a collective action," meaning that "the benefits of collective actions can only be effectively realized if other similarly situated employees are made aware of the pending action." *Id.* The Supreme Court has therefore allowed federal district courts to "issue notice of a pending collective action to 'potential plaintiffs' so that they may make 'informed decisions about whether to participate.'" *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–73 (1989)).

The Seventh Circuit has recently provided guidance on the "proper facilitation of notice," offering "workable standards to guide district courts in the process of issuing such notice and empower[ing] them to use their discretion to strike the proper balance between timely notice and judicial neutrality." *Id.* at 909–15. To secure notice, the plaintiff must "first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Id.* at 913. To do so, the plaintiff "must produce some evidence," often in the form of affidavits, "suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* The district court must allow the defendant to submit rebuttal evidence, and "must consider the extent to which plaintiffs engage with opposing evidence." *Id.*

It is important to note that this threshold showing does not automatically entitle the plaintiff to notice; instead, "[o]nce the district court is satisfied that there is at least a material dispute, the decision to issue notice will depend on its assessment of the factual dispute before it." *Id.* For example, if evidence regarding similarity "is likely in the hands of yet-to-be-noticed plaintiffs," the district court "may issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for

certification after opt-in and discovery are complete." *Id.* Alternatively, if the similarity dispute can be resolved before notice, the district court may "authorize limited and expedited discovery to make this determination and tailor (or deny) notice accordingly." *Id.* Ultimately, the district court should exercise its "sound discretion . . . to facilitate notice in an efficient way that strikes an appropriate balance between timely notice and judicial neutrality." *Id.* at 913.

## ANALYSIS

### I. Authorization of Notice[1]

The Court begins by analyzing whether Plaintiffs have made their "threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated," meaning that they "are victims of a common unlawful employment practice or policy." *Richards*, 149 F.4th at 913. Plaintiffs' claim is based on an allegedly unlawful rounding policy, meaning that they must "make a modest factual showing" not only that Titan had a common

---

[1] The Court notes that, in addition to court-authorized notice, Plaintiffs' motion also asks the Court to certify the proposed collective. Doc. 157 at 1. And throughout their briefings, the parties argue over whether certification and/or conditional certification of the proposed collective is appropriate in this case. To clarify, certification occurs after opt-in is complete and requires Plaintiffs to establish similarity by a preponderance of the evidence. *See Richards*, 149 F.4th at 912. At this stage of the case, any request to certify the collective is premature. The Court therefore will not make a final determination as to whether Plaintiffs and the potential plaintiffs are similarly situated until after the opt-in period and discovery are complete, at which point Plaintiffs bear the burden of moving for certification. *Id.*

Conditional certification, on the other hand, is one of the steps for facilitating notice set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). *See Richards*, 149 F.4th at 912 ("*Lusardi*'s two steps are commonly but misleadingly referred to as conditional certification (step one) and decertification (step two)."). Importantly, in *Richards*, the Seventh Circuit declined to adopt *Lusardi*'s two-step notice standard, finding it to be both inefficient and a threat to judicial neutrality. *Id.* at 911. The Seventh Circuit further emphasized that the phrase "conditional certification" is misleading, as it "does not produce a legal class or join any parties to the action." *Id.* "Rather, '[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees.'" *Id.* (citation omitted). Given this, the Court will not separately address the request for conditional certification and instead will simply analyze whether court-authorized notice is appropriate in this case.

rounding policy, "but also that such policy or plan 'violated the law.'" *Binissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, at *4 (N.D. Ill. Feb. 26, 2014).

The Court therefore begins its analysis by determining whether Plaintiffs have provided "some evidence" of a common policy or plan. *Richards*, 149 F.4th at 913. Plaintiffs have provided twenty-nine declarations from current and former Titan security guards detailing their duties and their experiences being subjected to the rounding policy. *See* Docs. 157-2–157-30. Moreover, Titan does not dispute the existence of this policy; to the contrary, it has provided evidence confirming that the "timekeeping policy utilizes rounding for [Titan's] security personnel." Doc. 169-1 ¶ 3. Thus, the Court finds that Plaintiffs have made the required threshold showing of the existence of a common rounding policy at this stage of the case.[2]

Plaintiffs have also provided sufficient evidence to create a material factual dispute as to the unlawfulness of this rounding policy. Importantly, while the practice of rounding "employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" is not *per se* unlawful under the FLSA, these policies must be "used in such a manner that [they] will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). And here, Plaintiffs have submitted evidence that, over time, Titan's rounding policy favored Titan over the security guards. Specifically, the declarations submitted by Plaintiffs state that Titan "taught [the declarants] and other security guards to arrive at [their] assigned location five (5) to

---

[2] While Titan argues that five of these declarants have claims outside the applicable statue of limitations, the Court does not find this argument compelling. Even if the Court were to exclude these five declarations from consideration, Plaintiffs have submitted enough remaining declarations to create a material factual dispute. *See Barrett v. NorthShore Univ. Healthsystem*, No. 1:17-CV-09088, 2019 WL 4412726, at *3 (N.D. Ill. Sept. 16, 2019) ("[T]here is no threshold number of co-worker declarations that a plaintiff must provide in order to make the requisite modest factual showing." (citation omitted)).

ten (10) minutes early so that [they] could talk with the outgoing guard and to generally get ready." *See, e.g.*, Doc. 157-2 ¶ 8. The declarants further state that their time would be rounded to match their scheduled shifts, resulting in them being "shorted hours and not being paid for clocking in early or staying late when [their] relief did not arrive on time." *See, e.g.*, *id.* ¶ 9. Additionally, ten declarants attached paystubs or other pay records to their declarations that they argue "make this [unlawful] practice apparent as the clock in/out times are all rounded to match the work schedule." Doc. 157-3; *see also* Docs. 157-4, 157-14, 157-19, 157-21, 157-23–157-27. At this stage of the case, this evidence is sufficient to make the requisite threshold showing that the common rounding policy violated the law.

Multiple other courts have come to the same conclusion when faced with similar allegations and evidence. In *Abukar v. Reynolds Machine Co.*, for example, the plaintiff similarly challenged his employer's "policy that rounded its hourly workers' start and end times to thirty-minute intervals." No. 19-CV-838, 2019 WL 6896154, at *1 (E.D. Wis. Dec. 18, 2019). Plaintiff moved for conditional certification, arguing that he and the proposed collective "were all subject to the above-quoted rounding policy . . . and that they each suffered a shortfall in compensation." *Id.* at *3. As support, he submitted "his own declaration and a declaration from another hourly employee" detailing "the implementation, scope, and effects of this rounding policy," along with "other policies that required the employees to be at their workstations and ready to go at the moment their shift started—suggesting that arriving early enough to prepare the workstations was mandatory, though implicit." *Id.* The court held that this evidence was "sufficient to establish a potential violation for conditional certification purposes" and therefore granted Plaintiffs' motion. *Id.*; *see also Schneider v. Union Hosp., Inc.*, No. 215CV00204, 2016 WL 6037085, at *10–11 (S.D. Ind. Oct. 14, 2016) ("Plaintiffs have set forth sufficient evidence

to show that Union Hospital's rounding policy and practice was improper."); *Binissia*, 2014 WL 793111, at *5 ("Plaintiffs have submitted evidence that, over time, ABM's rounding policy favored the employer over the employee in both the Northeast and North Central regions. . . . Thus, ABM Northeast's rounding policy was facially unequal and would appear to be inconsistent with FLSA regulations."); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 819–20 (N.D. Ill. 2010) (holding that plaintiffs' testimony that they were required to work past the end of their shifts and were therefore "deprived of several minutes of overtime pay per week" due to a rounding policy had "sufficiently shown that all members of the collective action were subjected to policies that may have violated the FLSA").

While Titan argues that its "time rounding policy does not violate the FLSA," Doc. 169 at 8, its arguments are unpersuasive at this stage of the case. Titan first argues that its rounding policy is "neutral on its face" and "does not differentiate on whether the employee or employer benefits from the rounding." *Id.* As support, Titan attaches a declaration from Kim Casano, its Vice President of Human Resources, detailing this facially neutral policy. Doc. 169-1 ¶ 3. But this is unpersuasive, because a facially equal policy can still violate the FLSA, *see, e.g.*, *Binissia*, 2014 WL 793111, at *5 ("Even were the policy equal on its face, it still may be unlawful under the FLSA[.]"), and Plaintiffs have submitted evidence that the rounding policy was not equal in practice. And while Titan argues that it "does not maintain any policy that prohibits employees from clocking in early, prohibits them from clocking in late, or otherwise discourages accurate time keeping practices," Doc. 169 at 9, Titan provides no explanation or authority to support the proposition that this somehow makes its rounding policy lawful under the FLSA.

Next, Titan attempts to undermine the credibility of Plaintiffs' declarants, arguing that they are "provably false" and contradicted by pay records. Doc. 169 at 10–11. As support, Titan

attaches pay records from four declarants "clocking into a shift prior to their scheduled start time and/or clocking out of a shift after their scheduled end time and receiving pay for that time worked." Doc. 169-1 ¶ 4; *see generally* Doc. 169-2. Titan also points to the pay records attached to Plaintiffs' declarations themselves, arguing that many of them "contradict the testimony given in the declarations." Doc. 169 at 11. But even if Titan occasionally compensated members of the proposed collective for their time when clocking-in early or clocking-out late, this does not mean that the rounding policy could not have unlawfully favored Titan over time. Moreover, at this stage of the case, the Court cannot delve into the credibility of Plaintiffs and the declarants. *See DePyper v. Roundy's Supermarkets Inc.*, No. 20 C 2317, 2025 WL 2430460, at *13 (N.D. Ill. Aug. 22, 2025) (holding that evidence "suggest[ing] that the opt-in plaintiffs might be exaggerating" in their declarations "simply bears on the credibility of the plaintiffs' testimony and the merits of their claims—it is not evidence of a difference among the plaintiffs themselves."); *Contreras v. Risinger Bros. Transfer*, No. 1:25-CV-01441, 2026 WL 1998381, at *1 (C.D. Ill. July 10, 2026) ("[U]nder *Richards*, a plaintiff does not have to prove his case, foreclose disputes, or satisfy an exceedingly high burden; instead, a plaintiff must produce '*some evidence*' that he and potential collective class members are similarly situated." (quoting *Richards*, 149 F.4th at 906)); *Barrett*, 2019 WL 4412726, at *4 ("Although the Court must 'evaluate[ ] the record before it, including the defendant's oppositional affidavits,' it is inappropriate to evaluate parties' credibility or resolve factual disputes at this early stage." (citations omitted)).

## II. Proposed Collective Definition

While the Court finds that Plaintiffs have made the required threshold showing to warrant providing notice to the proposed collective, it must still address Titan's arguments that the

definition of the proposed collective is overbroad. The Court addresses Titan's arguments regarding the suggested definition in turn.

### A. Arbitration Agreements

Titan first argues that security guards who are subject to valid arbitration agreements should not be included in the proposed collective, and the Court agrees. As the Seventh Circuit has explained, district courts "may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *see also Glenn v. Monterrey Sec. Consultants, Inc.*, No. 24-CV-8260, 2025 WL 2026302, at *3 (N.D. Ill. July 21, 2025) (applying *Bigger* to collective bargaining agreements). District courts "must give the defendant an opportunity to make that showing," and "when a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, the trial court must take specific steps." *Bigger*, 947 F.3d at 1050. If the plaintiff "contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients," the district court "must permit the parties to submit additional evidence on the agreements' existence and validity." *Id.* Ultimately, "[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.; see also id.* ("To be clear, if the employer does not prove that an employee entered a valid arbitration agreement, then the court may authorize notice to that employee—granted, of course, that the employee is otherwise an appropriate notice recipient.").

Here, Titan asserts that many of the members of the proposed collective "are subject to various arbitration provisions, both in standalone agreements, and multiple collective bargaining

agreements." Doc. 169 at 13. In response, Plaintiffs dispute both the number of security guards subject to such agreements and the enforceability of such agreements. *See* Doc. 173 at 6–7. Thus, the Court must allow the parties to present evidence regarding this issue before authorizing the issuance of notice. *See Sims v. Am. Heritage Protective Servs., Inc.*, No. 24 CV 5620, 2026 WL 1960754, at *6 (N.D. Ill. July 7, 2026) ("The Court must therefore allow the parties to present evidence on whether any employees falling within Sims's proposed collective entered valid arbitration agreements before it authorizes the issuance of notice. As a result, Sims may not issue notice until the Court has resolved the arbitration question.").

To expeditiously resolve this issue, the Court directs Titan to file a submission by October 16, 2026 establishing "by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Bigger*, 947 F.3d at 1050. Plaintiffs must then respond to this submission by October 30, 2026, and Titan shall file any reply by November 6, 2026. Should Titan establish by a preponderance of evidence that any employees are subject to a valid arbitration agreement, the Court will modify Titan's proposed collective definition accordingly. *See Sims*, 2026 WL 1960754, at *6 (modifying proposed collective definition to exclude employees subject to valid arbitration agreements).

**B. Temporal Scope**

Next, Titan takes issue with the proposed collective definition including employees employed by Titan "at any time from three years preceding the filing of the Complaint ***through the final disposition of this matter***," arguing that this language would "continuously expand the putative collective members as new Security Guards are hired after notice is originally issued and require new notices to be sent out until the date of trial." Doc. 169 at 17–18 (citation

omitted). As an alternative, Titan proposes "limit[ing] the scope of the proposed collective definition to just those Security Guards who worked for Defendant within the three years preceding the filing of the Complaint." *Id.* at 18. In response, Plaintiffs argue that this language will not practically impact the litigation because they "will not (and cannot) continuously add additional Opt-In Plaintiffs after the close of the notice period." Doc. 173 at 8. Rather, they ask that the Court include this language to "recognize[] that the damages will continue to accrue through final judgment." *Id.*

The Court agrees with Titan that Plaintiffs' proposed language is overbroad. Courts generally calculate the three-year limitations period "either from the date of notice, from the date an order granting conditional certification was issued, or from the date the complaint was filed." *Van Note v. Int'l Flavors & Fragrances Inc.*, No. 23-2211, 2024 WL 1994314, at *5 (C.D. Ill. May 2, 2024); *compare Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, No. 15 C 2361, 2016 WL 3693426, at *6 (N.D. Ill. July 12, 2016) (certifying collective "dating back three years from the date of the notice"), *with Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 785 (C.D. Ill. 2015) (certifying collective "within three years of the filing of the Complaint"), *with Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 903 (N.D. Ill. 2020) (certifying collective "from three years prior to the entry of the conditional certification order to the present"). While Plaintiffs' definition would further extend this "through the final disposition of this matter," Doc. 157 at 2, Plaintiffs provide no caselaw authorizing such a broad definition. To the contrary, the sole case Plaintiffs cite authorized notice to a proposed collective of individuals employed by the defendant "during a period from three years prior *to the entry of the conditional certification* order to the present." Doc. 173 at 8 (citing *Dennis*, 438 F. Supp. 3d at 903 (N.D. Ill. 2020)). And the arguments Plaintiffs make in their reply regarding damages are inapposite, as

they are unrelated to the scope of the collective. Thus, the Court limits the collective to three years prior to the filing of the Complaint.

### C. Identification of Potential Opt-in Plaintiffs

To effectuate notice, Plaintiffs request that the Court order Titan to produce information regarding potential plaintiffs. Titan does not object to this request, and the Court orders Titan to provide Plaintiffs with a list of the potential opt-in plaintiffs, including their names, dates and locations of employment, and contact information within fourteen days of this order. *See Day v. Menke Inc.*, No. 24-CV-3222, 2026 WL 1481926, at *6 (C.D. Ill. May 27, 2026) (requiring defendants to provide contact information for potential plaintiffs).

## III. Form of Notice

Finally, the Court addresses Plaintiffs' proposed notice form. "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1139 (N.D. Ill. 2017) (citation omitted). "The Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *Id.* at 1140 (citation omitted). "The Court has broad discretion regarding the details of a notice sent to potential opt-in plaintiffs[.]" *Watt v. Fox Rest. Venture, LLC*, No. 17-cv-2104, 2019 WL 698058, at *9 (C.D. Ill. Feb. 20, 2019).

Titan asks the Court to modify the language of Plaintiffs' proposed notice form in various ways to ensure the neutrality of that notice. First, Titan objects to the inclusion of the phrase "CLASS ACTION PURSUANT TO FED. R. CIV. P. 23," arguing that "[t]he inclusion of that phrase is misleading as it tends to suggest that the state claims have been certified and/or that this notice relates to the Rule 23 claims." Doc. 169 at 19. Plaintiffs provide no compelling reason

for including this in the notice, and the Court agrees with Titan that this language is unnecessary and risks misleading potential plaintiffs into believing that the Court has certified a Rule 23 class. The Court therefore directs Plaintiffs to remove this language from the notice.

Next, Titan objects to the subject of the proposed notice form, "RE: Unpaid Back Wages and Overtime Lawsuit Against Titan Security Group, LLC." Doc. 157-31 at 1. Titan argues that this "gives the appearance that the wages are, in fact, unpaid." Doc. 169 at 19. The Court disagrees. As Plaintiffs point out in response, this merely reflects the subject matter of the instant lawsuit. This conclusion is reinforced by the remainder of the proposed notice form. *See* Doc. 157-31 at 2 ("[T]he Court expresses no opinion on the merits of this case . . . Plaintiffs allege that Titan failed to compensate them for time worked before and after their scheduled shifts."). The Court therefore does not find it necessary to modify this proposed language.

Finally, Titan argues that "there is no mention of the Court's neutrality on the first page" of the proposed notice form. Doc. 169 at 19. Instead, the second page of the proposed notice form states that "the Court expresses no opinion on the merits of this case." Doc. 157-31 at 2. Titan believes this is insufficient, and Plaintiffs respond that they "do not oppose relocating that language to the first page in bold." Doc. 173 at 8. The Court finds Plaintiffs' proposal to be reasonable and directs Plaintiffs to modify the proposed notice form accordingly. *See Sims*, 2026 WL 1960754, at *5–6 (modifying proposed notice form to move "existing language stating that the Court has not taken any position on the merits" to the first section "in bold").

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' motion for court-approved notice [157], with the modifications delineated above. The Court defers the issuance of notice, however, to provide Titan with the opportunity to "establish[] by a preponderance of the

evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Bigger*, 947 F.3d at 1050. The Court directs Titan to file a submission on this issue no later than October 16, 2026. Plaintiffs' response must be filed by October 30, 2026, and any reply should be filed by November 6, 2026. The Court sets a status date for December 1, 2026 at 9:30 AM for ruling on this issue. The Court further defers the final determination as to whether Plaintiffs are similarly situated until after opt-in and discovery are complete, at which point Plaintiffs may move for certification.

Dated: September 28, 2026

SARA L. ELLIS
United States District Judge